COVINGTON, Chief Judge.
The Terrebonne Parish School Board appeals a judgment dated April 12, 1990,[1] which granted a preliminary injunction directing the School Board to implement a voluntary payroll deduction plan for members of the Terrebonne Association of Educators (TAE) by April 25, 1990. This action is related to the union strike which began on October 18, 1989, and ended January 3, 1990, when both parties signed a return to work agreement. At issue here is the implementation of one provision of that agreement which provided “[tjhere shall be a voluntary future dues deduction for employee organizations as soon as practicable within the current school year.” For the reasons hereinafter stated, we dismiss the appeal as moot.
A brief factual summary is helpful to understanding our disposition. For several years prior to the strike, by agreement with the TAE, the School Board had a payroll deduction plan for TAE members’ dues. After the strike began, the School Board enacted a resolution on November 2, 1989, ending the payroll deductions for TAE. From November through April, 1990, the payrolls issued did not withhold TAE members’ dues. When the January agreement between TAE and the School Board was signed, it contained the above quoted provision for a future payroll deduction plan to be implemented once again, but assigned no specific date for same to occur. In early March, TAE members requested verbally and in writing for the payroll deductions to be implemented in the March 23, 1990, payroll, but the School Board asserted this was not possible, as the strike had necessitated a vast amount of data processing and accounting tasks which tapped its finance department’s resources to the fullest. Moreover, the School Board had determined the necessity of sending out new authorization forms for dues deductions to its employees, in view of the November resolution revoking the deduction program previously in force and of more than 200 requests by former TAE members after the strike began to discontinue withholding their dues.
On March 13, 1990, TAE, through its president, Carol Davis, filed a petition for injunctive relief against the School Board, requesting that the School Board be restrained from requiring TAE members to execute new deduction authorization forms and ordering that the payroll deductions be implemented in the payroll for March 23, 1990. A hearing was held on March 15, 1990, after which the district court granted TAE the relief requested, but ordered the implementation of the payroll deductions for the April 25, 1990, payroll rather than the March payroll. The School Board unsuccessfully sought to suspensively appeal the judgment, but did devolutively appeal *1280 it, and this Court stayed both the judgment and any further proceedings in the trial court pending the appeal.[2]
In the oral argument before this Court on June 13, 1990, counsel for both parties conceded that the appeal of the judgment granting the preliminary injunction had become moot because the School Board had implemented a payroll deduction plan in the May 25, 1990, payroll. We agree. However, because the propriety of the issuance of the preliminary injunction is still a viable issue, we must address it.
We note at the outset that appellee TAE’s request for damages because of the School Board’s alleged violation of the preliminary injunction prior to this court’s stay order is not properly before us. TAE neither appealed nor answered the appeal; therefore, we can not fashion any such relief. Even if this procedural defect were overlooked, however, we would deny TAE’s request.
The trial judge based the issuance of the injunctive relief on specific findings that the School Board was seeking to destroy TAE and punish its members through revoking the payroll deduction plan and delaying implementation of it after the return to work agreement was signed. He also expressly found that TAE would be irreparably damaged, because of the lack of a payroll deduction plan. The evidence of record refutes these findings.
LSA-R.S. 42:457 allows any state, parish, or city department, board, or agency, the option of electing whether to make payroll deductions for payment of dues to labor organizations. The School Board was thus entitled to decide to no longer deduct TAE dues in November, 1989. While TAE argues that such a move can only be construed as retaliation for a lawful strike, the School Board points out that numerous requests were received from TAE members to discontinue the practice. In view of the many increased administrative burdens engendered by the strike, which testimony in the record amply describes, we cannot say the School Board’s action was unreasonable or solely for the purpose of retaliation. Discontinuing the payroll deductions was a practical response to a demanding, ever-changing situation, and was no more than the School Board was allowed to do by law.
Nor do we find that the delay from January to May was unreasonable with regard to implementing a payroll deduction plan again. The return to work agreement, which TAE negotiated with the School Board, stated that the future dues deductions would be instituted “as soon as practicable.” This rather open-ended deadline did not specify that the School Board expend extraordinarily burdensome efforts in this regard; merely, it required “practicable” measures. The record contained un-contradicted testimony by the head payroll clerk that the four or five employees of the finance department who handled the payrolls had worked in excess of 982 hours of overtime since the beginning of the strike up to the time of the March 15th hearing, and that approximately 200 hours of overtime were expended for the March payroll alone. She also testified that it simply was not possible to put the payroll deduction plan for dues into effect in March because of numerous other changes in payroll necessitated by the strike, such as in retirement benefits and make-up and overtime hours calculations for each employee, both striking and non-striking. Particularly supportive of the School Board’s position was her testimony regarding overtime until midnight or 2:00 a.m. in order to get the payrolls out because of strike-related changes.
We hold that “as soon as practicable” does not require an infinite number of such *1281 grueling overtime hours by School Board finance department employees.
The record does not support a finding of irreparable damage or injury, or indeed any damage or injury, to TAE, collectively or individually. TAE had the option of collecting its own dues from its members, and declined to do so. Moreover, the strongest testimony offered by TAE on the issue of harm resulting from the School Board’s actions was of TAE treasurer, Robin Lapeyrouse. Ms. Lapeyrouse testified that she routinely paid TAE’s bills, and that it was “possible” that there might be bills TAE would be unable to pay in the future because it did not have members’ dues for the months of November through March.
While appellee’s counsel correctly points out that the Louisiana Right to Work Law, LSA-R.S. 23:981 et seq., applies to this case [see, Davis v. Henry, 555 So.2d 457 (La.1990) at pp. 462-463] and that it provides a separate procedure for injunc-tive relief to employees, this argument does not avail TAE in this instance. LSA-R.S. 23:986[3] still requires that an employee be injured — past tense — whether the injury has resulted from an accomplished violation or a threatened violation. A possible future inability to pay bills does not constitute injury within the meaning of § 986. Nor does the record support a finding of irreparable injury under LSA-C.C.P. art. 3601.
Thus, we conclude that the issuance of the preliminary injunction against the Terrebonne Parish School Board was improper. However, because we find that the appeal is moot, this matter is dismissed.
Costs of these proceedings in the amount of $1539.08 are to be assessed equally between appellant and appellee.
APPEAL DISMISSED.
FOIL, J., concurs.
LeBLANC, J., assigns additional reasons.
LeBLANC, Judge,
assigning additional reasons.
I believe that with the disposition of this matter all litigation between the Terre-bonne Parish School Board and the Terre-bonne Association of Educators has ended. Now that the regular school session has ended, it is time for the parties to begin to reason together as persons of good will. Most importantly, it is time for the parties to prepare for the upcoming school year in order that all parties can do their utmost to accomplish what they all seek, that is, the education of the children of Terrebonne Parish.

. A prior judgment dated March 26, 1990, was ordered stayed by this Court on March 30, 1990, pending appeal, but on that same day, apparently prior to receipt of this court’s order, the district court vacated its judgment and ordered a limited new trial for the purpose of amending the judgment. A second judgment was then issued on April 12, 1990, with the sole change consisting of the setting of a bond in the amount of $5,000.00 for the plaintiffs as security for the injunctive relief requested.

. The granting of a suspensive appeal from a judgment granting a preliminary injunction is discretionary under LSA-C.C.P. art. 3612. This Court again ordered the second judgment of the trial court, as well as further proceedings, to be stayed pending appeal, as contempt proceedings had already been instituted by TAE against the School Board since our stay of the March 26, 1990, judgment which was vacated by the district court.

. LSA-R.S. 23:986 provides as follows:
Any employee injured as a result of any violation or threatened violation of the provisions of this Part shall be entitled to injunc-tive relief against any and all violators or persons threatening violation, and may also recover any and all damages of any character resulting from such violation or threatened violation. Such remedies shall be independent of and in addition to the penalties and remedies prescribed in other provisions of this Part.